# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **ALESHA P. HENSLEY,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11CV00056 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **CAROLYN W. COLVIN, ACTING** ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** ) | United States District Judge |
| **SECURITY,**[1] ) | |
| ) | |
| Defendant. ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Shawn C. Carver, Assistant Regional Counsel, and Alexander Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Alesha P. Hensley filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income pursuant to

---

[1] Carolyn W. Colvin became the Acting Commissioner on February 14, 2013, and is substituted for Michael J. Astrue as the defendant in this suit pursuant to Fed. R. Civil P. 25(d).

Titles II and XVI, respectively, of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-34 (West 2011 & Supp. 2013), 1381-83f (West 2012 & Supp. 2013). Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Hensley protectively applied for benefits on January 29, 2009, alleging disability beginning July 20, 2006. She met the DIB insured status requirements through March 31, 2008. Her claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on February 16, 2011, at which Hensley, represented by counsel, and a vocational expert ("VE") testified. The ALJ issued a decision on March 25, 2011, finding that Hensley had the residual functional capacity ("RFC") to perform a modified range of light work, including her past relevant work, and thus was not disabled under the Act. Hensley requested review by the Social Security Administration's Appeals Council, which denied her request for review, thereby making the ALJ's decision the final decision of the Commissioner. Hensley then filed the Complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is now ripe for decision.

II

Hensley alleged disability due to nerve damage in her back, rheumatoid arthritis, depression, anxiety, panic attacks, swelling all over, numbness in her feet, liver problems, fibromyalgia, hemorrhagic telangiectasias, fatigue, a hernia repair, and pain in her lower back, knees, ankles, right leg, shoulders, hands, joints, feet, and upper back.  She was 35 years old on the date of the ALJ's decision, making her a younger individual under the regulations.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c) (2013).  Hensley graduated from high school and performed past relevant work as a cashier and cook, data entry clerk, deli worker, housekeeper and child care worker, personal care aide, sewing machine operator, and retail stocker.

The record reveals that Hensley stopped working in July 2006, when she gave birth to her second daughter.  She received a traumatic epidural, and beginning on September 22, 2006, she visited Stone Mountain Health Services, complaining of lower back and leg pain, tingling, and numbness.  For the next several years, she visited Nurse Practitioner Lisa Deeds or James Bell, M.D., every few months.  She was prescribed various pain medications and generally reported that they were helping her pain and neuropathy.  At a visit in March 2008, Hensley complained of potential thyroid problems and diarrhea, but apparently made no mention of pain, neuropathy, depression, or anxiety.  She first complained of anxiety and depression on May 30, 2008, and Dr. Bell confirmed that at that time,

she had no previous diagnosis or treatment of anxiety or depression. Over the next several months, she was prescribed antidepressant and anti-anxiety medications, and she reported that these improved her condition. By January 2009, Deeds indicated that Hensley's anxiety was controlled.

In October 2008, Hensley visited rheumatologist Jeffry D. Bieber, M.D., who listed Hensley's numerous complaints but found many of them to be unsubstantiated. He opined that rheumatoid arthritis and lupus were unlikely due to the lack of objective evidence supporting those diagnoses. Dr. Bieber noted that Hensley was in no distress but had some tenderness on examination and appeared anxious throughout her visit.

In September 2009, Dr. Bell examined Hensley for neck pain and radiculopathy, and he indicated that she exhibited an exaggerated pain response and showed questionable effort during certain tests. He felt her reported degree of tenderness was greater than what would be expected. An MRI of her lumbar spine showed degenerative changes but no significant neural foraminal narrowing.

In late July 2009, Hensley was diagnosed with hepatitis C. She began interferon treatment, and by January 2010, Deeds noted that "the medication is doing what it is supposed to do" — Hensley's viral load was negative and her liver enzymes had returned to normal. (R. at 682.)

Hensley visited the University of Virginia pain management clinic in November 2009, and she and her husband became very upset regarding the use or non-use of opiates. She did not want to use opiates. According to Sheryl L. Johnson, M.D., Hensley was not interested in any other type of therapy. Dr. Johnson opined that the clinic had little to offer Hensley.

During the same month, Hensley underwent a hernia repair procedure. She experienced some inflammation in December and January, but in March and August 2010, physical and mental examinations were unremarkable. At the administrative hearing in February 2011, Hensley testified that she was no longer receiving interferon treatment for hepatitis c and that her hernia had been repaired.

Hensley began seeing Esther Ajjarupu, M.D., in October 2010, complaining of depression, anxiety, and pain. Examinations were largely unremarkable. Dr. Ajjarupu completed a mental assessment form in January 2011, in which she opined that Hensley would be unable to work because of her anxiety and depression. Dr. Ajjarupu also completed a physical medical assessment form in which she noted some limitations due to rheumatoid arthritis, but indicated that Hensley's ability to stand, walk, sit, climb, crouch, crawl, reach, handle, and feel would not be affected by her impairments.

Hensley first visited a mental health professional in January 2011, several weeks before her already-scheduled hearing date. Her attorney arranged an

appointment with Justin Taylor, LCSW, for counseling related to anxiety and depression. Taylor's observations from the session were largely unremarkable. He recommended that Hensley pursue hobbies to distract herself from her depression and anxiety and that she receive coping skills education and behavioral therapy.

Several days later, Hensley was evaluated by psychologist Robert Spangler, Ed. D., also at the behest of her attorney. He observed that she was clean and appropriately dressed, socially confident, generally understood instructions for tasks, demonstrated good concentration, was appropriately persistent, was alert and oriented times four, had adequate recall of remote and recent events, had a low average to average range of intelligence, had adequate social skills, related well to the examiner, and was cooperative, compliant, and forthcoming. Nevertheless, Dr. Spangler noted that Hensley appeared nervous and depressed, had a slow activity level, appeared to be in discomfort and needed to change positions, displayed tense motor activity, and was emotionally labile. Dr. Spangler assigned a global assessment of functioning ("GAF") score of 55-50[2] and opined that Hensley would require mental health treatment for longer than twelve months.

---

[2] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social, occupational, or school functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social,

At the hearing, the ALJ presented the VE with a hypothetical person of Hensley's age, education, and work experience who could occasionally lift, including upward pulling, up to twenty pounds; could frequently lift and/or carry, including upward pulling, up to ten pounds; could stand and/or walk with normal breaks for about six hours in an eight-hour workday; could sit with normal breaks for about six hours in an eight-hour workday; could occasionally climb stairs; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights.  The VE opined that such an individual could perform a range of light exertional activity, which would include Hensley's past relevant work as a cashier/cook, data entry worker, deli worker, sewing machine operator, and retail stocker.  When the ALJ added a restriction that the hypothetical individual could perform only simple, unskilled jobs, the VE responded that such an individual would nevertheless be able to work as a deli worker.

In his decision, the ALJ found that Hensley had the severe impairments of degenerative disc disease/disorder of the back, degenerative joint disease, status post right inguinal hernia repair, Rheumatoid arthritis (elevated Rheumatoid factor), hepatitis C, and fibromyalgia, but that none of these impairments met or

---

occupational, or school functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

equaled a listed impairment. He found that Hensley's depression and anxiety were not severe until January 25, 2011, the date of Dr. Spangler's evaluation, and thus did not meet the twelve-month durational requirement under the regulations. The ALJ gave no weight to Dr. Ajjarupu's mental evaluation because it was inconsistent with both Hensley's treatment history up to that point and with Dr. Ajjarupu's own examination findings. Moreover, the ALJ found that Hensley's mental symptoms were controlled with medication. The ALJ determined that Hensley retained the RFC to perform a range of light work, including her past relevant work as a cashier, cook, data entry worker, deli worker, and sewing machine operator, and thus she was not disabled under the Act.

     Hensley argues that the ALJ erred by failing to find Hensley's mental impairments severe and by failing to give controlling weight to the opinion of Dr. Ajjarupu. The Commissioner responds that the ALJ's conclusion as to Hensley's mental impairments was well supported by the record evidence, and Dr. Ajjarupu's opinion was not entitled to controlling weight because it was unsupported by objective findings and contradicted by other evidence of record. For the reasons stated below, I agree with the Commissioner on both counts.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2013). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

I must review the denial of benefits under the Act to ensure that the ALJ's findings of fact "are supported by substantial evidence and [that] the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). I must not reweigh the evidence or make credibility determinations because those functions are left to the ALJ. *Johnson*, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted).

Hensley asserts that the ALJ's finding that her depression and anxiety were not severe prior to January 25, 2011, is unsupported by substantial evidence. An impairment is not severe if it does not significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c) (2013). Here, the record contains no evidence that Hensley ever complained about anxiety or depression prior to May 30, 2008, which was after the expiration of her insured status. She was prescribed anti-depressant and anti-anxiety medication shortly thereafter, and she reported that the medication provided relief. By January 2009, Hensley's symptoms had improved, and Deeds declared that her anxiety was

controlled. Deeds did not see a mental health professional until several weeks before her hearing, when she saw both Taylor and Dr. Spangler at the suggestion of her attorney. Hensley's failure to seek counseling until that time, coupled with her statements that she obtained relief from her medications, belie the conclusion that she was severely impaired by anxiety and depression. Hensley had the burden of proving that she suffered from a severe mental impairment, and she failed to meet her burden. The ALJ's conclusion that Hensley's anxiety and depression did not become severe until January 25, 2011 is supported by substantial evidence.

Hensley also contends that the ALJ violated the treating physician rule by failing to give controlling weight to the opinions of Dr. Ajjarupu. An ALJ is required to weigh medical opinions based on "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. While "[c]ourts often accord greater weight to the testimony of a treating physician," *id.* (internal quotation marks and citation omitted), the ALJ is not required to do so "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see* 20 C.F.R. § 404.1527(d)(2) (2013). If the ALJ does not give the treating physician's opinion controlling

weight, the ALJ must "give good reasons in [the] notice of determination or decision for the weight [he or she] give[s] [the] treating source's opinion." 20 C.F.R. § 404.1527(c)(2) (2013).

Here, the ALJ provided good reasons for why he gave no weight to Dr. Ajjarupu's mental assessment. First, it was inconsistent with Hensley's treatment history up to January 2011. Second, it was inconsistent with Dr. Ajjarupu's own unremarkable examination findings. Third, Hensley's depression and anxiety appeared to be controlled with medication. These stated reasons adequately support the ALJ's decision to disregard Dr. Ajjarupu's opinion as to Hensley's mental impairments. The ALJ did give significant weight to Dr. Ajjarupu's physical assessment. Dr. Ajjarupu opined that Hensley's physical abilities were somewhat limited due to Rheumatoid arthritis, but that she retained the RFC to perform light exertional work. Moreover, Dr. Ajjarupu's conclusion that Hensley suffered from Rheumatoid arthritis appears to have been based largely, if not totally, on Hensley's subjective complaints, and that conclusion is contradicted by the opinion of rheumatologist Dr. Bieber, who opined that Rheumatoid arthritis was unlikely based on a lack of objective evidence. Thus, the ALJ acted well within his discretion in weighing the assessments completed by Dr. Ajjarupu.

IV

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence and complies with the applicable law.  The plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted.  A final judgment will be entered affirming the Commissioner's final decision denying benefits.

                DATED:   August 5, 2013

                /s/  James P. Jones
                United States District Judge